

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00357-CV

**IN THE INTEREST OF L.R.R.** and A.P.R., Children

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-PA-00430
Honorable Linda A. Rodriguez, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:         Patricia O. Alvarez, Justice
                 Irene Rios, Justice
                 Beth Watkins, Justice

Delivered and Filed: December 7, 2022

AFFIRMED

In this parental rights termination case, the trial court terminated Mom's rights to her children L.R.R. and A.P.R.[i] on three grounds: (D), (E), and (O). On appeal, Mom challenges the legal and factual sufficiency of the evidence for the trial court's findings on statutory grounds (D) and (E) and the best interests of the children.

Having reviewed the evidence under the elevated standards, we conclude it was legally and factually sufficient to support the trial court's findings on grounds (D) and (E) and the best interests of the children. Accordingly, we affirm the trial court's order.

---

[i] We use aliases to protect the children's identities. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

BACKGROUND

In this case, Mom is the only appellant, and we limit our recitation of the facts to those relating to Mom, the children, and Mom's conduct with respect to statutory grounds (D) and (E) and the best interests of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E).

**A.      History of Alcohol Abuse, Children's Births**

In 2014, Mom was arrested for DWI. She was put on probation in August 2014. Mom and Dad started living together in about 2015. That same year, Dad was arrested for DWI; his blood-alcohol content was "close to three times the legal limit." Dad was placed on probation in 2016. In February 2016, Mom pled true to violating her probation, and she was sentenced to thirty days in jail. In early 2017, L.R.R. was born. In December 2018, after repeatedly violating his probation conditions, Dad was sentenced to ninety days in jail. In late 2019, A.P.R. was born.

**B.      First Department Case**

In March 2020, the children were taken into care for the first time due to an incident of family violence and drug and alcohol abuse. At that time, L.R.R. was three years old, and A.P.R. was five months old.

When police arrived at the home, A.P.R. was covered with Mom's blood, L.R.R. had a parent's blood on her clothing, and L.R.R. had a hand-shaped bruise on her upper hip area. Mom and Dad were both intoxicated from alcohol and drugs, and Dad had assaulted Mom. He bruised both of her eyes and cut the bridge of her nose. Mom was admitted to a psychiatric care facility, and the children were removed by the police.

The Department created service plans for Mom and Dad, and they worked their services. In November 2020, the children were returned to them. On March 5, 2021, their legal case was closed.

**C.     Second Department Case**

*1.     Drugs and Alcohol*

Five days later, on March 10, 2021, Mom and Dad decided to celebrate the closing of their Department case. They left the children with Mom's sister, and they went out to go drinking. After they visited and drank alcohol at three different bars, Dad bought some cocaine, which Mom and Dad used. Thereafter, they went to Mom's sister's house to pick up their children, and they brought the children home.

*2.     Children Removed, Service Plan Created*

On March 12, 2021, the Department received a referral alleging neglectful supervision of the children. Based on its investigation, the Department removed the children, and it created service plans for Mom and Dad. Mom admitted—and regretted—drinking alcohol and using cocaine on the night of March 10th. She recognized that drinking alcohol led her to use drugs.

*3.     Dad's Continued Drug Abuse*

During this second Department case, Dad continued to struggle with drug abuse, and Mom knew that Dad was continuing to use drugs. Dad attended some Narcotics Anonymous meetings and an intensive outpatient treatment program. But despite participating in treatment programs, he relapsed with alcohol and methamphetamine in June and November 2021.

*4.     Mom's Progress*

Mom completed a substance abuse treatment program and a parenting course. She participated in therapy sessions, attended some Narcotics Anonymous meetings, and submitted to random drug tests—which were all negative.

*5.     Home Conditions*

On November 19, 2021, when the Department case worker visited, Mom and Dad's apartment was cluttered and dirty: there were empty beer cans on the coffee table, on the living

room floor, and on the bedroom floor. Mom denied that the beer cans were hers. There were also shattered plastic pieces and empty pill bottles on the floor, a pile of clothing on the bed, leftover food in the bedroom, dirty dishes stacked in the sink, and lots of trash on the floor. The case worker was concerned about the conditions, including trash and broken pieces of plastic on the floor—which a young child might put into its mouth. On November 28, 2021, the case worker again met with Mom in the home, and the home "was still the same way, dirty."

### 6. *Mom's Relationship with Dad*

At trial, Mom testified that she had ended her relationship with Dad about three weeks earlier. She wanted to have Dad in the children's lives, but she insisted she had ended her relationship with Dad because of his ongoing drug use.

### 7. *Trial Court Judgment, Mom's Appeal*

The trial court found that Mom engaged in conduct or knowingly placed the children with a person who endangered the children and that terminating Mom's and Dad's parental rights to their children was in the children's best interests.

Mom challenges the legal and factual sufficiency of the evidence supporting statutory grounds (D) and (E), but not (O). She also challenges the legal and factual sufficiency of the evidence on the best-interests-of-the-children findings.

Before we address the sufficiency issues, we briefly recite the applicable evidentiary and appellate review standards.

## EVIDENCE REQUIRED, ELEVATED STANDARDS OF REVIEW

"[I]n a bench trial, the judge as the trier of fact weighs the evidence, assesses the credibility of witnesses and resolves conflicts and inconsistencies." *In re S.J.R.-Z.*, 537 S.W.3d 677, 691 (Tex. App.—San Antonio 2017, pet. denied); *accord In re F.M.*, 536 S.W.3d 843, 844 (Tex. App.—San Antonio 2017, no pet.).

On review, an appellate court must not "substitute its own judgment for that of a reasonable factfinder." *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020); *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

The evidentiary standard[1] the Department must meet and the statutory grounds[2] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[3] and factual[4] sufficiency standards of review.  We apply those standards here.

### STATUTORY GROUNDS FOR TERMINATING DAD'S PARENTAL RIGHTS

**A.      Statutory Grounds Findings**

Mom challenges the trial court's findings on only grounds (D) and (E).  A single statutory ground finding, accompanied by a best interest of the child finding, when both are supported by sufficient evidence, is sufficient to support terminating a parent's rights under section 161.001.  *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.).

But where a parent's rights have been terminated on grounds (D) or (E), we must provide the details of our analysis supporting those grounds.  *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) ("We hold that due process and due course of law requirements mandate that an appellate court detail its analysis for an appeal of termination of parental rights under section 161.001(b)(1)(D) or (E) of the Family Code.").

We turn to the law and the evidence supporting the trial court's challenged findings, beginning with grounds (D) and (E).  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E).

**B.      Section 161.001(b)(1)(D)**

Under subsection (D), a parent's rights may be terminated if, before the child is removed, *see In re R.S.-T.*, 522 S.W.3d at 109 (relevant period), the parent "knowingly placed or knowingly

allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child," TEX. FAM. CODE ANN. § 161.001(b)(1)(D).

In the context of the statute, "'endanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *accord In re R.S.-T.*, 522 S.W.3d at 110.

However, "[a] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d at 109; *accord In re A.L.H.*, 468 S.W.3d 738, 746 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

"[U]nlawful conduct by a parent . . . who live[s] in the child's home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection D." *In re S.R.*, 452 S.W.3d at 360 (citing *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.)); *accord In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "[A] single act or omission" may support terminating a parent's rights under subsection (D). *In re R.S.-T.*, 522 S.W.3d at 109 (citing *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied)).

## C.    Section 161.001(b)(1)(E)

A parent's rights to their child may also be terminated if, inter alia, the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *In re R.S.-T.*, 522 S.W.3d at 109; *In re T.N.S.*, 230 S.W.3d 434, 439 (Tex. App.—San Antonio 2007, no pet.).

"Termination under subsection E must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent." *In re S.R.*, 452 S.W.3d at 360.

"Courts may further consider parental conduct that did not occur in the child's presence, including conduct before the child's birth or after [the child] was removed from a parent's care." *In re R.S.-T.*, 522 S.W.3d at 110; *see In re S.R.*, 452 S.W.3d at 360 (relevant time period).

For a parent to endanger a child, "it is not necessary that the [parent's] conduct be directed at the child or that the child actually suffers injury." *Boyd*, 727 S.W.2d at 533; *accord In re M.J.M.L.*, 31 S.W.3d 347, 350 (Tex. App.—San Antonio 2000, pet. denied) ("While subsection (E) endangerment must be a direct result of a parental course of conduct, the conduct described does not have to be specifically directed at the child . . . .").

A parent's use of illegal drugs "may qualify as an endangering course of conduct." *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *see In re T.N.S.*, 230 S.W.3d at 439.

## D.    Legally, Factually Sufficient Evidence for Ground (D)

The trial court could have considered the following evidence pertaining to Mom's endangering the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *In re S.R.*, 452 S.W.3d at 360.

Dad testified that he had used drugs, including alcohol and methamphetamine, while the children were in his care. And Mom testified she knew that Dad abused alcohol and drugs. Dad testified that he had seen Mom use alcohol while she was pregnant with L.R.R. and A.P.R., and Mom stated that drinking alcohol was a trigger for her to use drugs, such as cocaine.

In March 2021, when Dad and Mom went out to celebrate the closing of their first legal case with the Department, Mom admitted she drank alcohol and used cocaine. Then, while she

and Dad were under the influence of alcohol and cocaine, she picked up the children from her sister's home and brought them to her home.

The trial court could have found that Mom endangered the children when she drank alcohol while she was pregnant with each child and when she picked them up and took them home on March 10, 2021, when she was under the influence of alcohol and drugs. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *In re J.O.A.*, 283 S.W.3d at 345 n.4 (recognizing that a parent's alcohol abuse "and its effect on his or her ability to parent may qualify as an endangering course of conduct"); *In re M.R.J.M.*, 280 S.W.3d at 502.

The trial court could also have found that Mom endangered her young children by exposing them to a cluttered, dirty home with trash and debris that were choking and health hazards for young children. *Cf. In re A.K.L.*, No. 01-16-00489-CV, 2016 WL 7164065, at *2 (Tex. App.—Houston [1st Dist.] Dec. 8, 2016, pet. denied) (mem. op.).

We conclude the evidence was legally and factually sufficient to support by clear and convincing evidence the trial court's finding that Mom "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger[ed] the physical or emotional well-being of the child[ren]." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *In re J.O.A.*, 283 S.W.3d at 345 n.4; *In re M.R.J.M.*, 280 S.W.3d at 502.

We overrule Mom's first issue.

## E. Legally, Factually Sufficient Evidence for Ground (E)

For ground (E), the trial court could have considered the evidence recited for ground (D), and the following evidence. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *In re R.S.-T.*, 522 S.W.3d at 110.

Mom continued to live in a home that was cluttered and dirty after the children were removed in March 2021, including into late November 2021, after Dad had moved out. Mom

knew, as the case worker repeatedly warned, that if Dad was continuing to use drugs, it could jeopardize her rights to her children. After the children were removed, Dad continued using drugs and alcohol, and Mom knew it.

Mom also acknowledged that when she and Dad were together, they often fought. We note that domestic violence creates conditions that endanger children. *See In re S.R.*, 452 S.W.3d at 361.

Further, despite her multi-year history of alcohol abuse, with its tendency to lead her into drug use, Mom continued to drink alcohol. She denied drinking beer, but she admitted drinking wine. And she did not see any problem with her continuing to drink wine.

Considering all the evidence, including Mom's continuing relationship with Dad during the pendency of the case, Dad's admitted ongoing drug and alcohol abuse, the cluttered and dirty home, the many empty beer cans littering the home, and Mom and Dad's propensity to domestic violence, the trial court could have found that Mom's course of conduct endangered the physical or emotional well-being of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *In re R.S.-T.*, 522 S.W.3d at 110; *In re S.R.*, 452 S.W.3d at 361.

We conclude the evidence was legally and factually sufficient to support by clear and convincing evidence the trial court's finding on ground (E). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *In re R.S.-T.*, 522 S.W.3d at 110; *In re S.R.*, 452 S.W.3d at 361.

We overrule Mom's second issue. We turn now to the best interests of the children.

### BEST INTERESTS OF THE CHILDREN

In her third issue, Mom argues the evidence was legally and factually insufficient to support the trial court's finding that terminating her parental rights was in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). She insists that there was no evidence of several of the *Holley* factors. But "[t]he absence of evidence about some of these considerations would not

preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *accord In re S.J.R.-Z.*, 537 S.W.3d at 692.

## A.      Best Interest of the Child Factors

The Family Code statutory factors[5] and the *Holley* factors[6] for best interest of the child are well known.  Applying each standard of review and the applicable statutory and common law factors for best interests of the children, we review all the evidence.

The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interests of the children under section 161.001(b)(2).  *In re C.H.*, 89 S.W.3d at 28; *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b).  For brevity, we do not repeat in full the evidence supporting the statutory ground findings recited above, but we consider it and all the other evidence in our best-interest review.

## B.      Mom's Course of Conduct

Mom had a multi-year history of alcohol abuse, beginning with her arrest for DWI in 2014. The trial court could have believed that Mom drank alcohol while she was pregnant with L.R.R. and A.P.R., and she continued drinking alcohol after the children were removed the second time— with both removals involving alcohol use.  Mom completed some, but not all, of her service plan. But the Department case worker testified Mom's behaviors had not changed.  Mom continued her relationship with Dad until about three weeks before trial, despite Dad's ongoing drug and alcohol abuse and their history of domestic violence.  *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (7), (8), (10), (11), (12); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (C), (D), (I)).

## C.     Children's Ages and Vulnerabilities

At the time of trial, L.R.R. was not quite five years old and A.P.R. was just over two years old.  Neither child can care for itself; both are completely dependent on others for their physical and emotional health and safety.  *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (2), (7), (8), (12); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (C), (D)).

## D.     Children's Placement

The children are currently living with a foster-to-adopt placement.  The children's behaviors have improved since they have been with the current foster placement.  They are bonded to the foster mother, and she is meeting all the children's needs.  She wants to adopt L.R.R. and A.P.R.  *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G)).

## E.     Ad Litem's Recommendation

The ad litem recommended that it was in the children's best interests that Mom's rights be terminated so that the children could continue to live with the foster mother and be adopted by her. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (7), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G), (H)).

## F.     Sufficient Evidence

As the factfinder, it was the trial court's role to weigh the evidence, assess the credibility of the witnesses, and resolve the conflicting testimony.  *See In re J.O.A.*, 283 S.W.3d at 346; *In re S.J.R.-Z.*, 537 S.W.3d at 691.

Given its findings that Mom's course of conduct endangered both L.R.R. and A.P.R., the trial court could have formed a firm belief or conviction that L.R.R. and A.P.R. were at risk of future danger to their physical or emotional well-being if they were returned to Mom's care.  *See In re D.M.*, 452 S.W.3d at 471 ("A factfinder may infer that past conduct endangering the well-

being of a child may recur in the future if the child is returned to the parent."); *In re M.R.J.M.*, 280 S.W.3d at 502 (same).

It could also have formed a firm belief or conviction that the children are doing well living with the foster mother, the foster mother is meeting the children's present needs, she will meet the children's future needs, and she wants to adopt L.R.R. and A.P.R. *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re D.M.*, 452 S.W.3d at 471.

Having reviewed the evidence under the appropriate standards, we conclude the trial court could have reasonably formed a firm belief or conviction that it was in the children's best interests for Mom's parental rights to be terminated. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (citing *In re C.H.*, 89 S.W.3d at 25). Therefore, the evidence was legally and factually sufficient to support the trial court's best-interests-of-the-children findings. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

We overrule Mom's third issue.

## CONCLUSION

Because the evidence was legally and factually sufficient to support the trial court's statutory grounds (D) and (E) and best-interests-of-the-children findings, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[1] <u>Clear and Convincing Evidence</u>. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

² <u>Statutory Grounds for Termination</u>. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b). Here, the trial court found Mom's course of conduct met subsections (D), (E), and (O):

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
>
> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; [and]
>
> . . . .
>
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*Id.* § 161.001(b)(1).

³ <u>Legal Sufficiency</u>. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). If the court "determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true," the evidence is legally sufficient. *See id.*; *see also In re A.B.*, 437 S.W.3d 498, 506 (Tex. 2014).

⁴ <u>Factual Sufficiency</u>. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

⁵ <u>Statutory Factors for Best Interest of the Child</u>. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

> (1) the child's age and physical and mental vulnerabilities;
>
> (2) the frequency and nature of out-of-home placements;
>
> (3) the magnitude, frequency, and circumstances of the harm to the child;
>
> (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department;
>
> (5) whether the child is fearful of living in or returning to the child's home;
>
> (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;
>
> (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;
>
> (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;
>
> (9) whether the perpetrator of the harm to the child is identified;
>
> (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;
>
> (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;
>
> (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:
>
> (A) minimally adequate health and nutritional care;
>
> (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;
>
> (C) guidance and supervision consistent with the child's safety;
>
> (D) a safe physical home environment;
>
> (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and
>
> (F) an understanding of the child's needs and capabilities; and

(13)    whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[6] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

(A)    the desires of the child;

(B)    the emotional and physical needs of the child now and in the future;

(C)    the emotional and physical danger to the child now and in the future;

(D)    the parental abilities of the individuals seeking custody;

(E)    the programs available to assist these individuals to promote the best interest of the child;

(F)    the plans for the child by these individuals or by the agency seeking custody;

(G)    the stability of the home or proposed placement;

(H)    the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)    any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).